## OLAF G. BJORK *vs.* ED. S. BEAN, Sheriff, *et al.*

Argued Jan. 8, 1894. Reversed Jan. 18, 1894.

No. 8495.

**A bailee cannot sell the chattels and give title.**

An innocent purchaser in good faith of personal property from a mere bailee gets no title to the same by virtue of 1878 G. S. ch. 39, §§ 15–17, merely because such bailee was the former vendee in a conditional contract of sale which provided that the title should not pass to him until it was paid for; and he remained in possession after such contract was rescinded and terminated by mutual agreement between him and the vendor, even though such contract, or a memorandum thereof, had never been filed of record, as provided by such statute.

**One who had an option to purchase, never exercised, cannot give a title.**

Neither does such innocent purchaser in good faith get, by virtue of such statute, any title to property purchased by him from a mere bailee having a mere option to purchase the same, but which he never exercised before he so attempted to sell the property.

**If one levy on his own goods it is evidence against him but not an estoppel.**

Where A. levied an attachment on personal property, and sold the same on execution as the property of B., C., who claims to have purchased the property from B. before the time of such levy and sale, cannot insist that A. is estopped to deny that B. had title at the time of such levy and sale.

**Estoppel as against a third person.**

A would not be estopped, as against C., in such a case, to deny the title of B., even though the action in which said levy and sale were made was brought and judgment rendered against B. therein for the purchase price of such property.

Appeal by defendants, Ed. S. Bean, Sheriff, H. K. Halverson, C. H. Richards and William Lundeen, partners, from an order of the District Court of Ramsey County, *Chas. D. Kerr*, J., made August 10, 1893, denying their motion for a new trial.

Defendants, Halverson, Richards and Lundeen, had a contract to grade a section of the Great Northern Railway in Montana, and in June, 1891, they sublet a part of the work to John Bjork. To en-

able him to perform his contract they furnished him with fourteen horses and mules, with harness, blankets, scrapers, wagons and other property. He completed the work in April, 1892, and on August 25, 1892, sold the property to his brother, Olaf G. Bjork, and he shipped it to St. Paul. Halverson, Richards & Co. commenced an action November 14, 1892, against John Bjork in the District Court to re-cover money over paid to him, and attached this property as his. Thereupon, Olaf G. Bjork demanded the property and commenced this action against them and the Sheriff Bean to recover $2,500, its value. The defendants for answer denied that plaintiff owned the property. On the trial, May 29, 1893, plaintiff proved the pos-session of this property by his brother and the sale of it by him to plaintiff and its value, and rested. Defendants then introduced evidence tending to prove that John Bjork hired the property of Halverson, Richards & Co. to use on his grading contract with an option to buy it, if he elected so to do when the work was finished, that the title to the property was to remain in them until it was paid for, and that he had not paid for it. The jury found for the plaintiff and assessed his damages at $2,075.83. Defendants moved for a new trial, and being denied they appeal.

*Marson & Marson* and *Brooks & Hendrix*, for appellants.

The Court erred in charging the jury as follows: "As a general rule of law, where the owner of the property gives the entire and ab-solute possession of it to another, invests that other with all the signs and tokens of ownership, under circumstances and in such a manner as would justify an innocent third party in believing that that person so in possession was the owner of the property, and the person so believing in good faith, and for a valuable consideration purchases the property from the party so in possession, his title is good as against the world."

Even had the agreement between John Bjork and Halverson, Richards & Co. been a sale subject only to the condition that title should not pass until the purchase price were paid, and had plain-tiff bought in good faith and without notice of such condition, this action could not be maintained. 21 Am. & Eng. Encl. of Law, 571; *Baals* v. *Stewart*, 109 Ind. 371; *Ballard* v. *Burgett*, 40 N. Y. 314; *Griffin* v. *Pugh*, 44 Mo. 326; *Fifield* v. *Elmer*, 25 Mich. 48.

But there was in fact no sale to John Bjork, either absolute or conditional. He never owned this property. He had a mere option. If the right of purchase is added to the bailment, as where property is delivered to a hirer to keep and use for a certain time and then to be returned, with privilege of buying and keeping, the bailee has no power to sell and cannot give a good title to the purchaser from him. *Hart* v. *Carpenter*, 24 Conn. 427; *Grant* v. *King*, 14 Vt. 367; *Chamberlain* v. *Smith*, 44 Pa. St. 431.

The mere fact that the owner of property has intrusted the possession of it to another will not estop him from asserting his ownership against one who purchases from the bailee in the belief that such bailee is the owner. *Baker* v. *Taylor*, 54 Minn. 71; *Reed* v. *Lammel*, 40 Minn. 397; *Overstreet* v. *Manning*, 67 Tex. 657; *Zucker* v. *Karpeles*, 88 Mich. 413.

*Frank Ford*, for respondent.

The defendants were estopped from claiming that they were the owners of the property and from denying the sale by them to John Bjork, by taking the property on the attachment and selling it under the execution as his property. *Rapp* v. *Crawford*, 146 Pa. St. 21; *Crawford* v. *Nolan*, 70 Ia. 97; *Garber* v. *Doersom*, 117 Pa. St. 162; *Vanneter* v. *Crossman*, 42 Mich. 465; *People* v. *Reeder*, 25 N. Y. 302; *Butler* v. *Miller*, 1 N. Y. 496; *Citizens' Bank* v. *Dows*, 68 Ia. 460; *Billingsly* v. *Harris*, 79 Wis. 103; *O'Donald* v. *Constant*, 82 Ind. 212; *Bradley* v. *Coolbaugh*, 91 Ill. 148; *Scanlan* v. *O'Brien*, 21 Minn. 434; *Easton* v. *Goodwin*, 22 Minn. 426; *Bean* v. *Schmidt*, 43 Minn. 505; *Dyckman* v. *Sevatson*, 39 Minn. 132; *Edwards* v. *Stranghellan*, 105 Pa. St. 103; *Hartshorn* v. *Patroff*, 89 Ill. 509; *Swett* v. *Brown*, 5 Pick. 178; *Evans* v. *Warren*, 122 Mass. 303; *Haynes* v. *Sanborn*, 45 N. H. 429; *Rump* v. *Schwartz*, 67 Ia. 471; *Cummings* v. *Fearey*, 44 Mich. 39; *Sutton's Appeal*, 112 Pa. St. 598; *Bailey* v. *Hervey*, 135 Mass. 172; *Butler* v. *Hildreth*, 5 Met. 49.

If Halverson, Richards & Co. owned the property, their cause of action would have been replevin. But they did not bring replevin. They attached the property in a suit against John Bjork. This shows they regarded the property as his before any controversy had arisen as to its ownership. There is no proof of fraud, or that John Bjork

was insolvent or unable to pay his debts when he made the sale to plaintiff. If defendants had brought a creditor's bill to set aside the sale to plaintiff and to enforce their judgment against the property as the property of John Bjork, it must have failed, as there was no proof of any fraud or that plaintiff purchased the property with any wrong motive, or with any knowledge that defendants or any one else would question his brother's title.

Plaintiff bought in good faith and without notice of any condition attached to his brother's title. No note or memorandum of the conditions under which defendants claim title was filed in the office of the Town Clerk, as provided by 1878 G. S. ch. 39, §§ 15, 16. *Thomas Mfg. Co.* v. *Foote,* 46 Minn. 240; *Kinney* v. *Cay,* 39 Minn. 210.

CANTY, J. John Bjork, the brother of the plaintiff, made with the defendants Halverson, Richards & Co. a contract to do certain grading on the right of way of a railroad, and to do other work. This contract was in writing. Halverson, Richards & Co. also furnished him a certain "grading outfit," with which to do this work, but the contract as to this outfit was not in writing. It is claimed by plaintiff that it was an absolute sale of the grading outfit, to be paid for by the grading; and by the defendants, that it was a mere loaning or hiring of the property to John Bjork, with an option or privilege to him to purchase the property if he made sufficient out of the grading to enable him to pay for it. The evidence would have sustained a finding by the jury that the contract was either one of these, or that it was a conditional sale to him, and that the title did not pass until the outfit was paid for. Halverson, Richards & Co. afterwards commenced an action against John Bjork, and procured the defendant Bean, as sheriff of Ramsey county, to levy a writ of attachment issued therein on a part of this grading outfit, consisting of horses, mules, harness, wagons, scrapers, etc. Judgment was afterwards rendered in that action against John Bjork, and this property sold on execution issued thereon.

This is an action of trover, brought by the plaintiff, claiming that he bought this property of John Bjork before the levy of the writ of attachment on it, or the commencement of that action.

There was evidence tending to prove that, after the grading contract was performed, John Bjork was not able to pay for the outfit,

and agreed with Halverson, Richards & Co. to return the property to them, which he failed to do, and that they paid him $200 to pay the freight in shipping the property back to them.

At the close of the evidence the court charged the jury, among other things, as follows:

"But the defendants claim that the letter introduced in evidence, as also conversations which were had with John Bjork, tend to show, and are sufficient to establish the fact, that John Bjork elected not to take the property as his own. You will have the letter with you in the jury room, and can read it, and also take into consideration all the rest of the testimony in respect to that point. Be that as it may, with respect to the testimony on that point I charge you, as a general rule of law, that where the owner of property gives the entire and absolute possession of it to another, invests that other with all the signs and tokens of ownership, under circumstances and in such a manner as would justify an innocent third party in believing that that person so in possession was the owner of the property, and the person so believing, in good faith and for a valuable consideration purchases the property from the person so in possession, his title is good as against all the world."

The defendants excepted to the last part of this portion of the charge commencing with "be that as it may," etc. We think the exception is well taken. If John Bjork had held the property under a contract of conditional sale, the title remaining in Halverson, Richards & Co., and this contract was by mutual agreement rescinded, and all his rights under it terminated, so that he became a mere bailee; or if he held the property as a bailee, with merely an option to purchase whether that option was waived or not,—in any of these cases, such possession and appearance of ownership as he may still have had would not enable him to give title to an innocent purchaser.

It is true that 1878 G. S. ch. 39, §§ 15–17, provide that the interest of the vendor in any contract of sale conditioned that the title shall remain in the vendor until the purchase price is paid is void as against innocent purchasers in good faith, unless such contract, or a memorandum thereof, if oral, is filed of record. But, if there is no vendee's interest to pass to such a purchaser, no such interest will, under this statute, be created by the attempt of the vendee to sell the property to an innocent stranger for value; and, unless such

a vendee's interest passes, such innocent stranger will not be in a position to invoke the aid of this statute so as to cut off the vendor's interest. The principle here decided is confined to the facts in this case. No opinion is expressed as to a case where it may be claimed the vendee's interest is terminated by forfeiture, he still remaining in possession.

It is claimed by respondents that the error in the charge is immaterial, and without prejudice, for the following reasons:

*First.* That Halverson, Richards & Co. levied on this property and sold it on execution as the property of John Bjork; therefore they are estopped from denying that the property was his. It is sufficient answer to this to say that it was not then his, according to the position of respondent himself.

*Second.* That said action brought by Halverson, Richards & Co. against John Bjork, and the judgment recovered therein, was for the purchase price of this property, (of which it can hardly be said that there was any evidence,) and that, therefore, they are estopped from denying that they sold the property to him.

What would be the effect of these acts as against John Bjork himself it is not necessary here to decide.. Plaintiff's only claim to the property is that he purchased the property of John Bjork before any of these things were done. They would in no manner affect his rights, or prejudice him. While these acts of Halverson, Richards & Co. may be competent evidence tending to prove as a sort of admission by conduct that a sale of the outfit had been made by them to John Bjork, they constitute no estoppel in favor of plaintiff.

Order reversed.

(Opinion published 57 N. W. Rep. 657.)